UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NOEMI DELCARMEN PINEDA,

     Plaintiff,

v.                                    Case No. 8:19-cv-1481-T-NPM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## OPINION AND ORDER

Plaintiff seeks judicial review of a denial of Social Security benefits. The Commissioner filed the Transcript of the proceedings (referred to as "Tr." followed by the appropriate page number), and the parties filed a Joint Memorandum (Doc. 16). As discussed in this opinion and order, the decision of the Commissioner is reversed and remanded.

## I.    Social Security Act Eligibility and the ALJ Decision

### A.    Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous

period of not less than twelve months.[1]  The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.[2]

### B.    Procedural History

On June 20, 2016, Plaintiff filed an application for a period of disability and disability insurance benefits. (Tr., pp. 56, 131-134). Plaintiff asserted an onset date of December 8, 2015. (*Id.*, p. 133). Plaintiff's application was denied initially on July 14, 2016, and upon reconsideration on October 11, 2016. (*Id.*, pp. 56, 58).

Administrative Law Judge R. Dirk Selland ("ALJ") held a hearing on July 30, 2018. (*Id.*, pp. 23-49). The ALJ issued an unfavorable decision on October 18, 2018, finding Plaintiff not disabled from December 8, 2015, through the date of the decision. (*Id.*, pp. 10-18).

On April 26, 2019, the Appeals Council denied Plaintiff's request for review. (*Id.*, pp. 1-5). Plaintiff then filed a Complaint (Doc. 1) with this Court on June 19, 2019, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 14).

---

[1]  *See* 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

[2]  *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

### C.    Summary of the ALJ's Decision

An ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277 (11th Cir. 2020) (citing 20 C.F.R. § 416.920(a)(1)). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x. 931, 933 (11th Cir. 2015); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400. Unlike judicial proceedings, SSA hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111, (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to

oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *Id.* at 1359; *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) ("[T]he overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant."); 20 C.F.R. § 404.1512 (providing that the claimant must prove disability).

In this matter, the ALJ found Plaintiff last met the insured status requirements through December 31, 2020. (Tr.. p. 12). At step one of the evaluation, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 8, 2015, the alleged onset date. (*Id.*). At step two, the ALJ characterized Plaintiff's severe impairments as: primary open angle glaucoma of both eyes, status post laser

surgery. (*Id.*). At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (*Id.*, p. 13).

As a predicate to step four, the ALJ arrived at the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to performing occupations that require no more than frequent near acuity, far acuity, peripheral acuity, accommodation, field of vision, and depth perception bilaterally; no more than occasional night vision with bilateral eyes; and should avoid all driving.

(*Id.*, p. 14). Consequently, the ALJ determined Plaintiff was capable of performing her past relevant work as an insurance agent as generally performed and this work did not require the performance of work-related activities precluded by Plaintiff's RFC. (*Id.*, p. 17). The ALJ concluded Plaintiff was not under a disability from December 8, 2015, through the date of the decision. (*Id.*, p. 18).

## II.   Analysis

Plaintiff's appeal presents the following issue: whether the ALJ evaluated the opinion of treating specialist, Dr. Fridman, consistent with the regulations, Agency policy, and Eleventh Circuit precedent. (Doc. 16, p. 10).

### A.   Standard of Review

While the Court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553,

1560 (11th Cir. 1995), the Court's review of the agency's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. If supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that "the evidence preponderates against" the agency's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

### B.    Evaluation of Dr. Fridman's Opinion

At step four, an ALJ must properly consider treating, examining, and non-examining physician's opinions and weigh these opinions and findings as an integral part of the ALJ's RFC determination. *See Rosario v. Comm'r of Soc. Sec.*,

877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012). Whenever a physician offers an opinion concerning the nature and severity of a claimant's impairments—including the claimant's symptoms, diagnosis, and prognosis; physical and mental restrictions; or what the claimant can still do—the ALJ must state with particularity the weight given to the opinion and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such an explanation, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart*, 662 F.2d at 735).

When weighing medical opinions, an ALJ must consider many factors. 20 C.F.R. § 404.1527(c). "For instance, the Social Security regulations command that the ALJ consider (1) the examining relationship; (2) the treatment relationship, including the length and nature of the treatment relationship; (3) whether the medical opinion is amply supported by relevant evidence; (4) whether an opinion is consistent with the record as a whole; and (5) the doctor's specialization." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1260 (11th Cir. 2019) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded good cause exists

when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

In January 2016, Plaintiff began treatment with Dr. Fridman for suspected glaucoma with symptoms of foggy vision in both eyes. (Tr., pp. 347-348). After examination, Dr. Fridman diagnosed Plaintiff with anatomic narrow angles in both eyes, suspicious for intermittent subacute angle closure, suspicious for glaucoma damage, and suspicious for dry eye syndrome. (*Id.*, p. 348). Dr. Fridman continued treatment from January through February 2016 with Plaintiff presenting with symptoms of blurred vision and dry eye. (*Id.*, pp. 336-349).

On February 11, 2016, Dr. Fridman completed a form for Liberty Mutual Insurance. (*Id.*, pp. 398-99). In this form, Dr. Fridman opined that Plaintiff's current visual acuity was 20/40 in the right eye, and 20/20 in the left eye. (*Id.*, p. 398). Dr. Fridman found Plaintiff to have a chronic condition from which she is unlikely to recover. (*Id.*). Specifically, Dr. Fridman found Plaintiff to have difficulty with depth perception due to unequal vision in her two eyes. (*Id.*). And Plaintiff had limited peripheral vision due to her condition. (*Id.*). Dr. Fridman noted that Plaintiff felt unsafe to drive. (*Id.*). Dr. Fridman opined it was unclear whether Plaintiff could return to work or if the restrictions were likely permanent. (*Id.*).

In February and March 2016, Plaintiff complained of headaches, burning sensations in both eyes aggravated by sunlight and watching television, as well as blurred vision. (*Id.*, pp. 329-38). On April 18, 2016, Dr. Fridman completed a follow-up questionnaire for Liberty Mutual Insurance. (*Id.*, pp. 432-33). Dr. Fridman responded that Plaintiff underwent a laser peripheral iridotomy to the left eye on March 11, 2016. (*Id.*, p. 432). Dr. Fridman restricted Plaintiff to no driving, limited computer use, and limited reading time. (*Id.*). Her objective medical findings included visual field defect, affecting fixation, and decreased visual acuity. (*Id.*). Dr. Fridman found these restrictions permanent. (*Id.*).

On August 18, 2016, Plaintiff reported that her vision was deteriorating more in her right eye than left and she still had burning in both eyes. (*Id.*, p. 384). Dr. Fridman diagnosed Plaintiff with severe primary open angle glaucoma (POAG) in both eyes, nuclear sclerosis in both eyes, as well as anatomic narrow angle S/P PI OU in both eyes, and dry eye syndrome in both eyes. (*Id.*, p. 385).

On October 6, 2016, Dr. Fridman completed another questionnaire. (*Id.*, p. 381). Dr. Fridman found Plaintiff to have 20/60 in the right eye with 20/50 corrected vision, and 20/40 in the left eye. (*Id.*). She found Plaintiff's visual fields severely restricted, no surgery indicated, and her visual impairments to last at least twelve months. (*Id.*).

In May 2017, Plaintiff reported deteriorating vision in both eyes, with decreased near and distance vision in both eyes, sharp pain in the right eye every Sunday and then her vision would go white for 15-30 seconds. (*Id.*, p. 390). Dr. Fridman found Plaintiff suffered from severe POAG, borderline interocular pressure, and dry eye syndrome in both eyes. (*Id.*, p. 391). Dr. Fridman opined that Plaintiff's transient visual loss could be related to blood flow and recommended Plaintiff have her vascular flow checked. (*Id.*).

On June 5, 2018, Dr. Fridman competed a Functional Limitations (Vision) report. (*Id.*, pp. 395-96). Dr. Fridman found Plaintiff had visual acuity loss. (*Id.*, p. 395). And based on this diagnosis, she found the following: extreme limitations in reading printed matter, reading a computer screen, performing fine work, writing, performing assembly or other work requiring eye-hand coordination, and using a computer keyboard. (*Id.*). Dr. Fridman also found Plaintiff had a loss of the peripheral field. (*Id.*, p. 396). And she found Plaintiff was mildly limited in moving about freely without tripping over objects while walking and while walking up and down stairs; and markedly limited in detecting approaching persons or objects. (*Id.*). Lastly, Dr. Fridman found Plaintiff affected by bright lights due to glare and limited vision in bright lights. (*Id.*).

In the decision, the ALJ summarized some of Dr. Fridman's notes. (Tr., pp. 15-17). The ALJ noted that Dr. Fridman performed laser peripheral iridotomy on

Plaintiff's right eye on January 28, 2016 and on her left eye on March 17, 2016. (*Id.*, p. 15). The ALJ indicated that the treatment notes show conservative treatment, citing Dr. Fridman's notes showing Plaintiff may need cataract surgery in the future, but is tolerating the symptoms caused by cataracts for now.

Specifically, as to the opinion evidence, the ALJ noted:

> As for the opinion evidence, the undersigned affords significant weight to the opinion of Julia Miller, RN, dated September 18, 2016 (Exhibit 9F). Ms. Miller opined that the claimant is limited to no driving[3] and limited computer and reading time (Id./36). The undersigned affords significant weight to this opinion, as it is generally consistent with the medical evidence and overall evidence of record.

(Tr. p. 16). Importantly, Nurse Miller is not the author of this opinion. (*Id.*). Indeed, Nurse Miller worked for Liberty Life Assurance Company of Boston, as shown by her telephone number matching that on the Liberty Life Assurance Company's letterhead. Dr. Fridman completed the questionnaire on February 11, 2016 and the opinions contained in the letter were hers. (*Id.*). Notably, the ALJ afforded significant weight to this opinion.[4]

---

[3] The Court finds some inconsistencies in the decision regarding driving. At one point, the ALJ noted that despite Plaintiff's impairments she has engaged in a "somewhat normal level of daily activity." (Tr, p. 15). For example, the ALJ noted Plaintiff could drive a car in 2016. (*Id.*). Yet, the ALJ limited Plaintiff's RFC to "avoid all driving." (Tr., p. 14).

[4] While affording significant weight to this opinion, the ALJ has not accounted for any limitations related to clerical perception, which is required to perform Plaintiff's past relevant work. DOT 250.257-010. And limitations as to near and far acuity do not incorporate Plaintiff's clerical perception ability.

Conversely, the ALJ afforded only some weight to Dr. Fridman's June 5, 2018 report:

> In a treating source statement dated June 5, 2018, Dr. Fridman reported that the claimant has loss of visual acuity, which causes her to have extreme limitations reading printed matter, reading a computer screen, performing fine work, writing, performing assembly or other work requiring eye hand coordination, and using a computer keyboard (Exhibit 8F/6; See also, Exhibit 6F/2). She opined that the claimant has loss of the peripheral field, which causes her to have mild limitations moving about freely without tripping over objects while walking, marked limitations detecting approaching persons or objects, and mild limitations walking up and down stairs (*Id.*/7). She reported that the claimant experiences glare and limited vision in bright light (*Id.*). The undersigned affords only some weight to Dr. Fridman's opinion, as it is inconsistent with treatment notes from her last evaluation of the claimant in May 2017, more than one year prior to the date she offered her opinion, which documents the claimant's vision as OD 20/80 and OS 20/50 (*Id.*/1). Furthermore, Dr. Fridman documented that the claimant's progressive lens prescription did not change from August 2016 to May 2017, which shows OD +0.75 (Add +2.25) and OS -0.25 (Add +2.25) (*Id.*/1, 3).

(*Id.*, pp. 15, 16). In affording only some weight to this opinion, the ALJ failed to explain why he afforded significant weight to one opinion but only some weight to a later opinion by the same practitioner, especially in light of the fact that Plaintiff's visual limitations continue to deteriorate over time.

In discounting Dr. Fridman's June 2018 opinion, the ALJ reasoned that Dr. Fridman's opinion was inconsistent with the treatment notes of Plaintiff's last evaluation in May 2017, mainly because Plaintiff's progressive lens prescription had

not changed over the last year. (*Id.*, pp. 16-17).[5] Throughout Dr. Fridman's treatment notes, she found Plaintiff to have foggy or blurred vision, no matter the prescription. (*Id.*, pp. at 329-49, 432-33, 384-85, 390-91). She also found Plaintiff's vision worsened over time, with additional symptoms of headaches, burning sensations, and her vision going white for short periods of time, again no matter the prescription. (*Id.*). As early as February 2016, Dr. Fridman found Plaintiff to have difficulty with depth perception and limited peripheral vision. (*Id.*, p. 398). Even after the left laser peripheral iridotomy in April 2016, Dr. Fridman restricted Plaintiff to no driving, and limited computer use and reading time. (*Id.*, p. 432). Then in October 2016, Dr. Fridman noted Plaintiff's visual acuity of 20/60 and corrected of 20/50 in the right eye and 20/40 in the left eye, and also found Plaintiff's visual fields severely restricted. (*Id.*, p. 381).

Even if the Court does not consider Dr. Fridman's June 5, 2018 report finding Plaintiff having extreme visual limitations, Dr. Fridman's notes and prior reports support these findings. As a specialist, Dr. Fridman's notes and opinions do not indicate that Plaintiff's blurred vision, headaches, burning eyes, and other symptoms

---

[5] Of note, the ALJ discounts State agency consultant Steven Arkin, M.D.'s opinion that Plaintiff's glaucoma is not severe. (Tr., p. 16). Dr. Arkin found Plaintiff's glaucoma not severe based on Plaintiff's daily activities and Plaintiff's prescription in 2016 being OD 20/60 and OS 20/40. (*Id.*). The ALJ afforded Dr. Arkin's opinion little weight, finding the evidence established Plaintiff's glaucoma impairment to be severe. Yet, the ALJ discounted Dr. Fridman's June 2018 opinion as to the severity of Plaintiff's impairment and the limitations associated with it because Plaintiff's visual acuity had not changed significantly. These findings appear incompatible.

were tied to whether her lens prescriptions remained the same. An ALJ may discount a treating physician, even a specialist, if the treating physician's opinion is inconsistent with her own medical records. But here, the Court finds the ALJ failed to create a "logical bridge" between the absence of change in a 2017 lens prescription and discounting Dr. Fridman's 2018 opinions (but not her 2016 opinions) concerning Plaintiff's overall visual abilities as somehow inconsistent with previous treatment notes.

For the foregoing reasons, the Court finds the ALJ failed to establish good cause to afford only some weight to Dr. Fridman's opinion and the decision is not supported by substantial evidence.

### C.    Conclusion

Upon consideration of the submission of the parties and the administrative record, the Court finds the decision of the Commissioner is not supported by substantial evidence.

It is **ORDERED** that the decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider Dr. Fridman's opinions in light of the medical evidence of record. If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22. The Clerk

of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on November 30, 2020.


*Nicholas P. Mizell*

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE